CLARA LUZ MOSCOSO,

                *Plaintiff*,                       MEMORANDUM
   -against-                                   AND ORDER
                                                               08-CV-4734 (JG)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                *Defendant*.
-------------------------------------------------------x

A P P E A R A N C E S :

      MILTON J. CARLIER
          305 Broadway, Suite 402
          New York, NY 10007
          *Attorney for Plaintiff*

      BENTON J. CAMPBELL
          United States Attorney
          Eastern District of New York
          271 Cadman Plaza East
          Brooklyn, NY 11201
     By:   John M. Kelly
          *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

        On August 19, 2005, plaintiff Clara Luz Moscoso filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). She alleged an inability to work, beginning in December 1, 2000, due to high blood pressure, high cholesterol, and diabetes. Moscoso's application was denied on February 15, 2006, and she requested a hearing before an administrative law judge ("ALJ"). Moscoso was represented by counsel at the January 30, 2007 hearing before ALJ James B. Reap. On August 13, 2007, the ALJ concluded that Moscoso was not disabled within the meaning of the Social Security Act ("the Act") because

she retained the residual functional capacity ("RFC") to perform her past work as a frame packer. The Appeals Council denied Moscoso's request for review on September 26, 2008. The adverse decision thus became the decision of the Commissioner of Social Security ("Commissioner").

Moscoso seeks review of that decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Based upon the record before the Commissioner, the parties have cross-moved for judgment on the pleadings. I heard oral argument on June 5, 2009.

Because the ALJ's decision is supported by substantial evidence in the record, I grant the defendant's motion for judgment on the pleadings and deny plaintiff's cross-motion.

BACKGROUND

A. *Moscoso's Statements and Testimony*

Moscoso was born in 1947. She worked as a packager in a glass factory from July 1968 to August 1997 and in a clothing store from July 1999 through September 1999. These jobs required her to walk or stand the entire day and lift less than ten pounds. Moscoso stopped working on October 1, 1999 because she was laid off.

In a function report dated October 14, 2005, Moscoso indicated that her obesity made it difficult for her to clean and dress herself. Although she still cooked for herself, it took her longer to do so because she was unable to stand for "very long." Tr. at 96. She stated that she could no longer dance and had stopped going to church because she could "barely walk." Tr. at 98. She lived with her niece, who did most of the cleaning and shopping for their household.

At the hearing, Moscoso testified that pain in her legs and back and numbness in her extremities rendered her unable to work. She also stated that she had diabetes, swelling, dizziness, and impaired vision. She stated that she "can't be standing up" and could not walk

2

half of a block. Tr. at 199. She stated that she was unable to help with any household chores but that she went to church every Sunday.

B.   *Medical Evidence*

   1.   *Dr. DeLara*

Moscoso received treatment from Dr. Francisco DeLara, an internist, from August 17, 2001 through 2006. During Moscoso's initial visit, DeLara noted that she had undergone a cholecystectomy (surgical removal of the gallbladder) in February 2000 and had a history of diabetes, anemia, and hypertension. She denied any arthritis pain and had no fissuring of her feet or edema in her extremities. He did note harsh breath sounds and mild kyphosis (outward curvature) of the spine. Moscoso was 5'2"[1] tall and weighed 256 pounds, and her blood pressure was 100/80. He diagnosed diabetes, dry skin, dermatisis (inflamed skin), and obesity, prescribed Glucophage, Cozaar, Lipitor, and Actos, and counseled Moscoso on diet and exercise.

On September 6, 2001, during a follow-up visit, Moscoso complained of dry skin and itching. Dr. DeLara noted that Moscoso was "doing well." Tr. at 124. Her blood pressure was 120/90 and her lungs were normal. Dr. DeLara prescribed medication for dermatitis.

Between August 2001 and January 6, 2004, Moscoso visited Dr. DeLara approximately every two months for treatment of her diabetes and hypertension. Her blood pressure fluctuated between 150/100 and 120/80, and her weight steadily increased to 280 pounds. Aside from a mention of a "body ache" on March 4, 2003, Tr. at 130, and a prescription for Tylenol on April 15, 2002, Tr. 125, De Lara's treatment notes do not suggest any complaints of pain, and consistently state that Moscoso was "doing well" or had "[n]o major complaints." *See*, *e.g.*, Tr. at 127.

The record also contains notes from Moscoso's visits to Dr. DeLara on August 23, 2004, February 28, 2005, June 12, 2006, September 26, 2006, and November 19, 2006. Aside from two statements that Moscoso's diabetes was "out of control," Tr. at 136, and that Moscoso weighed as much as 295 pounds, *id.*, the notes from these visits are substantially similar to those noted above.

2. *Dr. Valerio*

On May 25, 2005, Moscoso was seen at the Medisys Family Care Center of Jamaica Hosptial. She complained that she had been suffering from pain in her right knee for one week. The attending physician observed no swelling and a good range of motion, prescribed Procardia, and ordered a nutritional consultation.

On September 6, 2005, Moscoso visited the Wyckoff Heights Medical Center for a "complete check up." Tr. at 155. Her diabetes was assessed as uncontrolled and she was urged to see a dietician, a podiatrist, and an ophthalmologist and follow up in two weeks.[2] At her September 20, 2009 follow-up visit, Moscoso was seen by Dr. Rubi M. Valerio. Dr. Valerio diagnosed diabetes and uncontrolled hypertension. He advised Msocoso to keep a log of her glucose levels and to return in two weeks to follow up regarding her blood pressure.

On November 8, 2005, Dr. Valerio reported that Moscoso came in for her check-up "without complaints," Tr. at 158, and noted diabetes, hypertension, obesity, and "lower back pain." *Id.* at 159. Valerio increased Moscoso's Glyburide dosage, prescribed Actos, another drug for the treatment of diabetes, and encouraged "regular physical activity as tolerated and adherence to diet." *Id.* He also noted that Moscoso "is applying for disability and she has

---

[1] Other evidence on the record indicates that Moscoso is 5'3", Tr. at 157, or 5'9". Tr. at 133.
[2] A September 8, 2005 visit to the podiatry clinic at Wyckoff Heights revealed diminished sensation

expectations I can get it for her (!?)" *Id.* at 158-59. Valerio also saw Moscoso on February 1 and February 15, 2009. On the former occasion she indicated that she was feeling better, and on the latter date, she had no complaints.

On March 27, 2006, Dr. Valerio completed a medical report on Moscoso. He diagnosed her with hypertension, diabetes, obesity, hyperlipidemia, and stress incontinence, and indicated that Moscoso's hypertension, diabetes, and osteoarthritis were conditions that had lasted or could be expected to last at least twelve months. He listed Moscoso's "symptoms" as "hands numbness" and "back pain" and her "signs" as "obesity" and "A1C=8.8."[3] Tr. at 179. He also indicated that Moscoso did not have to lie down during the day and was not on any medication with noticeable side effects. When asked whether Moscoso had any condition which does or could produce pain, he answered "yes . . . osteoarthritis with obesity." *Id.* at 180.

With regard to Moscoso' functional capacity, Dr. Valerio opined that Moscoso could sit for up to one hour continuously and for a total of two hours in an eight-hour work day, could stand for up to one-half hour continuously and for a total of one-half hour, and could walk for up to one-half hour continuously and for a total of one-half hour. She could lift and carry five pounds frequently during an eight-hour day and could occasionally lift up to ten pounds, but could never lift more than ten pounds or carry more than five pounds. She could never bend, squat, or climb but could reach frequently. Moscoso had no restrictions on her ability to use her hands or feet for repetitive movements. She was totally restricted around unprotected heights, moving machinery, marked changes in temperature or humidity, and dust, fumes, and gases. She

---

to light touch, deep heel fissures and early diabetic neuropathy.

[3] An A1C test measures blood glucose levels.

was also moderately restricted by stress and was unable to travel by bus or subway on a daily basis because she was "easily disoriented." Tr. at 183.

3. *Consultative Examination*

On October 31, 2005, Dr. Kautilya Puri performed a consultative examination. Moscoso complained of "sharp, squeezing" knee and back pain "for the past 3 months." Tr. at 132. She indicated that she could do some cooking and clean and dress herself, but that her niece did the cleaning, laundry, and shopping. Dr. Puri observed decreased vibratory sensation in the feet, "disc narrowing" in her spine, and an "increased cardiac diameter and an unfolded aorta. Dr. Puri diagnosed diabetes, high blood pressure and cholesterol, multiple joint pains with a history of low back pain, and morbid obesity. Dr. Puri noted no objective limitation to communication, fine or gross motor activity, or her "[activities of daily living]," and "mild limitations" to Moscoso's gait. Tr. at 140.[4]

C. *Moscoso's Application for Benefits*

As mentioned above, on August 19, 2005, Moscoso filed her application for benefits, and the application was denied initially and on reconsideration after a hearing. The Appeals Council denied review of Moscoso's appeal on September 26, 2008, making ALJ Reap's decision the final administrative decision in this case.

DISCUSSION

A. *Standard of Review*

In order to be found eligible for disability benefits, Moscoso needed to prove before the Commissioner that, "by reason of [a] medically determined physical or mental

---

[4] Puri also performed pulmonary function testing on January 27, 2006, but the test results were inconclusive because Moscoso did not understand the instructions with the aid of a translator (Moscoso's native

impairment . . . which has lasted . . . for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d) (2)(A).[5]

On review, the question presented is whether the Commissioner's decision that Moscoso is not entitled to disability benefits is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran*, 362 F.3d at 31(internal quotation marks omitted).

The Commissioner employs a five-step analysis in evaluating disability claims:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits h[er] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider h[er] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform past work. Finally, if the claimant is unable to

---

language is Spanish and she is not fluent in English) and put forth "terrible" effort. Tr. at 143.

[5] Substantial work activity is defined as work that involves doing significant physical or mental activity. 20 C.F.R. § 404.1572. Work can be considered substantial even if it is done on a part-time basis or if less money is earned or less responsibility is associated with it than with previous employment. *Id*. Activities such as household tasks, hobbies, therapy, school attendance, club activities, or social programs are generally not considered to be substantial gainful activity. *Id*.

7

> perform h[er] past work, the [Commissioner] then determines
> whether there is other work which the claimant could perform . . . .
> [T]he claimant bears the burden of proof as to the first four steps,
> while the [Commissioner] must prove the final one.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)); *see* 20 C.F.R. § 404.1520 (2005).

The plaintiff, or claimant, carries the initial burden of proving she is disabled within the meaning of the Act. 42 U.S.C. §§ 423(d)(5), 1382c(3)(G); *see Ramos v. Apfel*, No. 97 Civ. 6435, 1999 WL 13043, at *4 (S.D.N.Y. Jan. 12, 1999) (citing *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984)). In other words, the claimant bears the burden through the first four steps described above. *See Green-Younger v. Barnhart,* 335 F.3d 99, 106 (2d Cir. 2003).

B.   *The ALJ's Decision*

ALJ Reap followed the five-step procedure outlined above, reaching the conclusion at step four that Moscoso was not entitled to disability benefits. He determined that Moscoso had not engaged in substantial gainful activity since December 1, 2000, and that she had "severe hypertension, diabetes mellitus, and obesity." Tr. at 21. He then found that Moscoso did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* He concluded, "[a]fter careful consideration of the entire record, . . . that [Moscoso] retains the ability to lift lighter objects," to sit throughout the course of an eight-hour workday, and "to stand and/or walk for periods up to six hours," Tr. at 22, and that she was therefore "capable of performing past relevant work as a frame packer." Tr. at 24. Accordingly, the ALJ denied Moscoso's claim for benefits. As mentioned above, that decision constitutes the final decision of the Commissioner in this case.

C.  *Moscoso's Allegations of Error*

In her motion for judgment on the pleadings, Moscoso offers four reasons why the ALJ's decision should be vacated. I address each in turn.

1.  *The Treating Physician Rule*

The ALJ must give the medical opinion of a treating physician as to the "nature and severity" of a claimant's impairments "controlling weight" so long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. 20 C.F.R. § 404.1527(d)(2) (2005); *Green-Younger,* 335 F.3d at 106; *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

Moscoso claims that the ALJ failed to properly consider the March 27, 2006 report of Dr. Valerio, but does not specify exactly how the ALJ erred. Although the ALJ mistakenly referred to Dr. DeLara as the author of this report, he clearly considered it. He declined to give it controlling weight, noting, *inter alia*, that it was inconsistent with Dr. DeLara's treatment notes, "which mention nothing of osteoarthritis, or limiting lower back pain." Tr. at 24. Although De Lara's notes indicate mention a "body ache" on March 4, 2003, Tr. at 130, the first specific mention of back pain offered by Moscoso appears in her November 8, 2005 visit to Dr. Valerio. During this visit, Valerio also noted that Moscoso "is applying for disability benefits and she has expectations I can get it for her (!?)" *Id.* at 158-59. Under these circumstances, I believe this inconsistency justifies the ALJ's decision not to give the March 2006 report controlling weight.

9

The ALJ does not explicitly say how much weight he gave this report. However, it is obvious that he found it only minimally probative, largely because it was not supported by objective medical evidence and because it was inconsistent with other evidence in the record. Supportability and consistency are both factors that the ALJ must consider in determining the value of a medical opinion, and both of these factors arguably undercut the significance of the opinions contained in the March 2006 report. *See* 20 C.F.R. § 416.927(d)(4)-(5). Furthermore, Moscoso does not identify any factors that would render the report more persuasive. In these circumstances, I am satisfied that the ALJ adequately fulfilled his duty to "always give good reasons . . . for the weight" given to the treating source's opinion. 20 C.F.R. § 416.927(d)(2).

2.  *Moscoso's Statements About Her Symptoms*

In making a disability determination, the Commissioner must consider the claimant's own "statements about [his or her] symptoms, such as pain, and any description [he or she] . . . may provide about how the symptoms affect [the claimant's] activities of daily living and . . . ability to work." *See* 20 C.F.R. § 416.929(a). Indeed, the regulations acknowledge that "[s]ince symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [the ALJ shall] . . . carefully consider any other information [that the claimant] may submit about [her] symptoms." 20 C.F.R. § 416.929(c)(3). However, "[s]tatements about a claimant's pain cannot alone establish disability; there must be medical evidence that shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged." *Davis v. Massanari*, No. 00 Civ. 4330, 2001 WL 1524495, at *6 (S.D.N.Y. Nov. 29, 2001). In order to assess the scope of any functional limitations resulting from a medically determinable impairment, the

Commissioner must evaluate the intensity and persistence of the claimant's subjective symptoms, including pain, and consider the claimant's credibility in light of "all of the available evidence." *Id.* (citing 20 C.F.R. § 416.929(c)(1)); *Sarchese v. Barnhart*, No. 01-CV-2172, 2002 WL 1732802, at *7 (E.D.N.Y. July 19, 2002).

Because the ALJ has discretion to evaluate the claimant's credibility in this regard, "[i]f the ALJ's decision to ignore plaintiff's subjective complaints of pain is supported by substantial evidence, then [the federal court] must uphold that determination." *Aronis v. Barnhart*, No. 02 Civ. 7660, 2003 WL 22953167, at *7 (S.D.N.Y. Dec. 15, 2003). However, the ALJ must set forth his or her reasons for discounting a plaintiff's subjective complaints with "sufficient specificity to enable [the district court] to decide whether the determination is supported by substantial evidence." *Miller v. Barnhart*, No. 02 Civ. 2777, 2003 WL 749374, at *7 (S.D.N.Y. Mar. 4, 2003) (quotations and citation omitted).

In this case, the ALJ concluded that Moscoso's testimony was not credible, observing that "a review of progress notes fails to reveal findings which are consistent with the extent of pain and limitation reported by the claimant." Tr. at 22. Moscoso argues that this conclusion was erroneous because "[d]uring the relevant period in question, Ms. Moscoso has consistently complained about headaches, a lot of pain in her legs and feet, [and] pain in her back . . . ." Pl. Mem. at 4.

This statement cannot be reconciled with the record. Moscoso made no mention of this debilitating pain to Dr. DeLara, even though she visited him every two months between 2001 and 2004, and four additional times between 2004 and 2006, with complaints ranging from constipation to coughing. And although Moscoso alleged that she had suffered from her

11

symptoms since her 2000 operation, the record only demonstrates one instance of her seeking treatment for joint pain. Inconsistency is a "strong indication" that subjective complaint is not credible, and an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." Soc. Sec. Ruling 96-7p, 1996 WL 374186 at *5, *7. Accordingly, the ALJ's decision not to credit Moscoso's testimony was supported by substantial evidence.

### 3. *Moscoso's Remaining Arguments*

Moscoso's remaining contentions also lack merit. She argues that, given her testimony and Dr. Valerio's opinion, the ALJ erred in finding that she could perform her past relevant work. Although the ALJ's finding is inconsistent with that evidence, the ALJ acted within his discretion in discounting that evidence. Similarly, although Moscoso alleges that the ALJ erred by failing to apply the Medical Vocational Guidelines, these guidelines are inapplicable when, as here, the ALJ permissibly determines that a claimant has the capacity to perform her past relevant work.

## CONCLUSION

For the reasons set forth above, defendant's motion for judgment on the pleadings is granted and plaintiff's cross-motion is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: June 8, 2009
      Brooklyn, New York